UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| NAVNOOR SINGH,<br><br>Petitioner,<br><br>v.<br><br>MARK BOWEN, Acting Warden of Adelanto Detention Center, et al,<br><br>Respondents. | Case No. 5:26-cv-06863-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## PROCEEDINGS

On November 15, 2026, petitioner Navnoor Singh ("Petitioner"), represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), accompanied by a supporting declaration (Docket No. 1-1) and two exhibits (Docket Nos. 1-2, 1-3). The Petition alleges the following claims for relief: (1) Petitioner's detention violates his rights to procedural due process in violation of the Fifth Amendment; (2) Petitioner's detention violates his rights to substantive due process in violation of the Fifth Amendment; (3) Petitioner's detention violates the Immigration and Nationality Act ("INA"); and (4)

Petitioner's detention violates the Administrative Procedure Act. (Docket No. 1 at 23-35).[1]

Pursuant to the General Order 26-05 and Briefing Schedule (Docket No. 5), Respondents were to enter their appearance no later than November 18, 2026, and were to file an Answer to the Petition on or before November 22, 2026. However, Respondents failed to appear and have not filed an Answer or otherwise responded to the Petition.

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND[2]

Petitioner is a native and citizen of India. (Petition at ¶ 21). He entered the United States without inspection on May 5, 2024. (Id. at ¶ 22). Following his entry, Department of Homeland Security ("DHS") briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien. (Id. at ¶ 23). DHS thereafter affirmatively released Petitioner from physical custody pursuant to an Order of Release on Recognizance ("ROR"), permitting him to reside in the United States subject to conditions of supervision. (Id. at ¶ 24). As conditions of his release, Petitioner was enrolled in Alternatives to Detention ("ATD") and was required to report to U.S. Immigration and Customs Enforcement ("ICE") as directed, including through the SmartLINK electronic reporting application. (Id. at ¶ 25).

/ / /

/ / /

/ / /

---

[1] Citation to the pleadings shall refer to the Court's CM/ECF pagination at the top of each page.

[2] The Background is taken from the Petition.

On May 6, 2024, DHS served Petitioner with a Notice to Appear ("NTA"), charging him solely under INA § 212(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled. (Id. at ¶ 26). Petitioner subsequently pursued asylum and related relief in removal proceedings before the Immigration Court. (Id. at ¶ 27). Following the Immigration Judge's entry of a removal order, Petitioner timely filed an appeal with the Board of Immigration Appeals ("BIA"). (Id. at ¶ 28). Petitioner's appeal remains pending before the BIA, and he continues to pursue his claims for protection from removal through the administrative appellate process. (Id. at ¶ 29).

Petitioner obtained employment authorization in connection with his asylum application and possessed an employment authorization document at the time of his November 13, 2026 redetention. (Id. at ¶ 30). Since his initial release in May 2024, Petitioner has consistently complied with the conditions of supervision imposed upon him by DHS. (Id. at ¶ 31). Beginning on or about May 6, 2024, Petitioner regularly reported through the SmartLINK application on a weekly basis, as required by ICE. (Id. at ¶ 32). Petitioner consistently completed his required SmartLINK check-ins and appeared for in-person ICE appointments whenever instructed to do so. (Id. at ¶ 33). Petitioner did not miss any required ICE appointment or otherwise violate the reporting obligations imposed upon him. (Id. at ¶ 34). Petitioner has no criminal history. (Id. at ¶ 35). Petitioner has maintained gainful employment while residing in the United States. (Id. at ¶ 36). Petitioner has established family ties in the United States. (Id. at ¶ 37).

Throughout his period of release, DHS remained aware of Petitioner's whereabouts through his participation in ATD, his weekly SmartLINK reporting, and his compliance with ICE reporting instructions. (Id. at ¶ 38). DHS permitted Petitioner to remain at liberty in the community for approximately two years and six months, subject to the conditions of his previously authorized release. (Id. at ¶ 39).

During this period, Petitioner complied with DHS supervision, maintained employment, pursued his immigration proceedings, and remained available to immigration authorities. (Id. at ¶ 40).

Prior to November 13, 2026, DHS had not informed Petitioner that he had violated any condition of his release or supervision. (Id. at ¶ 41). DHS had not notified Petitioner that his compliance was deficient or that any alleged misconduct required revocation of his previously authorized liberty. (Id. at ¶ 42).

On September 12, 2026, ICE contacted Petitioner and instructed him to appear at an ICE office on November 13, 2026. (Id. at ¶ 48). During that communication, Petitioner was informed that he needed to appear at the ICE office to sign paperwork with an immigration officer. (Id. at ¶ 49). The November 13, 2026 appointment was not part of Petitioner's regularly scheduled reporting routine but was arranged following ICE's specific instruction that he appear to complete paperwork. (Id. at ¶ 50). ICE did not inform Petitioner during the September 12, 2026 communication that the actual purpose of the appointment was to take him into immigration custody. (Id. at ¶ 51). Petitioner was not informed that his release on recognizance was being reconsidered, that he had violated any supervision condition, or that ICE intended to revoke his previously authorized liberty. (Id. at ¶ 52). Consistent with his history of compliance, Petitioner voluntarily appeared at the ICE office on November 13, 2026, as instructed. (Id. at ¶ 53). Petitioner appeared because he understood that compliance with ICE reporting instructions was required under his existing conditions of release. (Id. at ¶ 54). At the time he reported, Petitioner had consistently completed his weekly SmartLINK reporting requirements since May 2024. (Id. at ¶ 55).

/ / /

/ / /

/ / /

Before appearing for the November 13, 2026 appointment, Petitioner had received no advance notice that ICE intended to revoke his release or return him to physical custody. (Id. at ¶ 56). Petitioner had not been informed that any alleged violation, misconduct, or change in circumstances placed his previously authorized liberty at risk. (Id. at ¶ 57). Upon Petitioner's appearance at the ICE office on November 13, 2026, ICE officers immediately took him into physical custody. (Id. at ¶ 58). At the time of his re-detention, Petitioner had not missed any required ICE appointment, violated his ATD requirements, or otherwise failed to comply with his conditions of release. (Id. at ¶ 59). Petitioner had no criminal history and was not informed that his detention was based upon any criminal conduct. (Id. at ¶ 60).

After ICE officers took Petitioner into custody, Petitioner asked why he was being detained. (Id. at ¶ 61). ICE officers did not provide Petitioner with an individualized explanation identifying any violation of his release conditions or any specific reason why his continued liberty had become unacceptable. (Id. at ¶ 62). Petitioner informed ICE officers that he had pursued asylum and that his appeal of the Immigration Judge's removal order remained pending before the BIA. (Id. at ¶ 63). Petitioner also presented his employment authorization document issued in connection with his asylum application. (Id. at ¶ 64). Despite Petitioner's efforts to provide information regarding his employment authorization and pending administrative appeal, ICE officers proceeded with his detention without affording him a meaningful opportunity to address the asserted basis for taking him into custody. (Id. at ¶ 65).

Petitioner was not provided an opportunity to present evidence concerning his history of compliance, employment, family ties, pending administrative appeal, or other individualized circumstances bearing upon whether detention was necessary. (Id. at ¶ 66). Respondents did not identify to Petitioner any failure to appear for an ICE appointment or other required proceeding. (Id. at ¶ 67). Respondents did not

identify to Petitioner any violation of his ATD supervision requirements. (Id. at ¶ 68). Respondents did not identify to Petitioner any criminal conduct occurring during his period of release. (Id. at ¶ 69). Respondents did not identify to Petitioner any individualized change in circumstances demonstrating that the release arrangement DHS had maintained for approximately two years and six months could no longer continue. (Id. at ¶ 70). Before Petitioner's re-detention, Respondents did not provide him with notice that they intended to revoke his previously authorized liberty. (Id. at ¶ 71). Respondents did not provide Petitioner with a meaningful opportunity to contest the proposed deprivation before taking him into physical custody. (Id. at ¶ 72). Respondents did not provide Petitioner with an individualized pre-deprivation hearing before a neutral decisionmaker. (Id. at ¶ 73). Respondents did not afford Petitioner an opportunity, before detention, to present evidence or argument concerning whether his continued detention was necessary in light of his compliance history and individual circumstances. (Id. at ¶ 74).

Petitioner was therefore taken from an established state of liberty in the community, which DHS had affirmatively authorized and maintained since May 2024, and returned to physical confinement without advance notice or individualized pre-deprivation process. (Id. at ¶ 75). At the time Respondents revoked his liberty, Petitioner had a documented history of compliance with DHS supervision, no criminal history, gainful employment, employment authorization issued in connection with his asylum application, a pending BIA appeal, and family ties in the United States. (Id. at ¶ 76). Petitioner's appearance at the ICE office on November 13, 2026—the very occasion upon which Respondents detained him—was itself an act of compliance with the reporting instructions DHS had imposed upon him. (Id. at ¶ 77). Petitioner did not voluntarily surrender his previously authorized liberty or knowingly waive his right to constitutionally adequate procedures by appearing for an ICE appointment that officers had represented was necessary to complete

paperwork. (Id. at ¶ 78). Petitioner's November 13, 2026 re-detention constituted a new deprivation of physical liberty following approximately two years and six months of authorized community release, rather than the continuation of an uninterrupted period of immigration custody. (Id. at ¶ 79). Regardless of whether Respondents characterize Petitioner's present detention as arising under 8 U.S.C. § 1225(b) or § 1226(a), they did not provide him advance notice, a meaningful opportunity to respond, an individualized pre-deprivation hearing, or constitutionally adequate procedures before terminating his existing liberty. (Id. at ¶ 80).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

/ / /

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to

the context of immigration detention"). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## IV.

## DISCUSSION

### A. Habeas Relief is Warranted.

As noted, Respondents have elected not to appear in this action, despite the Court's order to do so.

Federal courts must decide cases based on the arguments the parties present. See United States v. Sineneng-Smith, 590 U.S. 371, 375–76 (2020); Greenlaw v. United States, 554 U.S. 237, 243 (2008). That rule follows from the party presentation principle: "In our adversarial system of adjudication . . . in both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Sineneng-Smith, 590 U.S. at 375 (2020) (cleaned up). The Supreme Court has reminded the lower courts that they are "essentially passive instruments of government" who must adhere to the narrow questions raised by the parties. Margolin v. Nat'l Assoc. of Immigration Judges, 146 S. Ct. 1285, 1288 (2026) (citation omitted).

/ / /

Here, Petitioner raises, inter alia, a claim that his detention without any pre-deprivation process violated his procedural due process rights under the Fifth Amendment and that the proper remedy is his release from custody. (Docket No. 1 at 23-27). This claim has been found to be a basis for habeas relief by numerous courts in this Circuit, including this one. See, e.g., Eddier David Taborda Loero v. James Janecka, et al, No. 5:26-cv-03713-DTB (Order Granting Petition for Writ of Habeas Corpus) (C.D. Cal. July 15, 2026).

Respondents elected not respond to the Petition and to Petitioner's claims, including his procedural due process claim. Respondents are represented by competent counsel with full access to all the relevant facts concerning Petitioner's detention, and they offered no factual or legal basis to reject his claim. Their failure to do so constitutes a forfeiture of the arguments they could have made in support of their position. See Martinez v. Sessions, 873 F.3d 655, 660 (9th Cir. 2017) ("The government does not offer any argument on the merits of this petition; therefore, it has waived any challenge to the arguments [the opposing party] raised."); Am. Int'l Enters., Inc. v. F.D.I.C., 3 F.3d 1263, 1266 n.5 (9th Cir. 1993) ("Issues raised in the brief that are not supported by argument are deemed abandoned."). And where the opposing party offers no reason to reject a particular claim, the Court is not duty-bound to search for a reason on their behalf - indeed, the party presentation principle requires the court to refrain from doing so. Sineneng-Smith, 590 U.S. at 375-76 ("[A]s a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.") (cleaned up).

As such, the Court need not decide whether it agrees with the merits of Petitioner's claims in all respects; it simply acknowledges that his claim that his detention is without lawful authority is unrefuted by Respondents. As numerous other courts have found in such circumstances, the Petition should therefore be

granted based on Respondent's failure to oppose the primary relief sought. See, e.g., Barajas-Bautista v. Warden, Desert View Annex, No. 5:26-cv-03135-SK, 2026 WL 2058433, at *2 (C.D. Cal. July 13, 2026) (granting petition and ordering release where the respondent did not oppose granting a bond hearing but did not address the petitioner's remaining claims; noting "Respondents, who alone possess petitioner's A-file, his Form I-213, and his criminal history record, filed nothing and denied nothing"); Soleimani v. Larose, No.: 25-cv-3082-DMS-DEB, 2025 WL 3268412, *3 (S.D. Cal. 2025) (granting habeas petition where government's answer to the petition did not respond to all claims in the petition, including a Fifth Amendment due process claim); Singh v. Chiang, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, *4 (C.D. Cal. 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession); N-E-M-B v. Wamsley, No. 3:25-cv-989-SI, 2025 WL 3527111, at *1 (D. Or. Dec. 9, 2025) ("Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition.").

Accordingly, because Respondents have not met their burden "to show cause why the writ should not be granted," 28 U.S.C. § 2243, the Court grants the Petition and orders Petitioner to be released.

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that Judgment be entered: (a) Granting the Petition; (b) ordering Respondents to immediately release Petitioner Navnoor Singh (A# 226-024-059) from custody subject to the same conditions (if any) that he was subject to at the time he was arrested and detained; (c) ordering Respondents to return all property and documents confiscated from Petitioner (if any) during him arrest and processing into detention; (d) enjoining Respondents and their officers,

agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without complying with all applicable statutes and regulations, including written notice and a pre-deprivation hearing before a neutral arbiter; and (e) ordering Respondents to file a status report within two (2) business days of the date of this Order to confirm that Petitioner's release from custody is subject to the same conditions (if any) that he was subject to at the time he was arrested and detained.

DATED: November 23, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE